IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUAN GERONIMO MENDOZA,     No. 2:18-cv-01663-HZ

          Plaintiff,     OPINION & ORDER

   v.

COLLETTE PETERS, MICHAEL
GOWER, BRAD CAIN, JUDY
GILMORE, JASON BELL, "JOHN"
KING, "JOHN" TURNER, "JOHN"
ALY, "JOHN DOE," and "JOHN DOE,"

          Defendants.

Alex Hostetler
14320 SW Cherryhill Drive
Beaverton, OR 97008

Alexander Meggitt
P.O. Box 5248
Portland, OR 97208

    Attorneys for Plaintiff

1 – OPINION & ORDER

Michael R. Washington
OREGON DEPARTMENT OF JUSTICE
Trial Division
1162 Court Street NE
Salem, OR 97301

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiff Juan Geronimo Mendoza brings these § 1983 claims against Defendants Collette Peters, Michael Gower, Brad Cain, Judy Gilmore, Jason Bell, "John" King, "John" Turner, "John" Aly, "John Doe," and "John Doe." Defendants now move for summary judgment, arguing: (1) Plaintiff cannot establish an Eighth Amendment violation against Defendant Turner, Aly, and King for failing to treat his exposure to OC spray; and (2) Defendants Peters, Cain, Gower, Gilmore, and Bell cannot be held liable on a theory of *respondeat superior*. Defendants also argue they are entitled to qualified immunity. For the reasons that follow, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

     Between approximately 6:30 PM and 8:00 PM on November 18, 2017, officers at Snake River Correctional Institution ("SRCI") deployed OC/CS spray to carry out three cell extractions in the disciplinary segregation unit ("DSU"). Meggitt Decl. Ex. 1 (Mendoza Dep.) 21:11-25, 26:9-14; King Decl. Att. 2. Plaintiff was close to the cells where the extractions took place. Plaintiff testified that soon after the extractions began, OC/CS spray "pour[ed]" into his cell and he quickly began to feel its effects. Meggitt Decl. Ex. 1 (Mendoza Dep.) 20:15-19, 19:1-10. The burning in his eyes became more severe after a short time, and his throat felt like it was closing up. Meggitt Decl. Ex. 1 (Mendoza Dep.) 19:23-25. He tried to use his sink to relieve the pain, but it produced so little water that it had little mitigating effect. *Id.* at 20:2-7. He testified that he felt

helpless and like he was being tortured. *Id.* at 20:25-21:3. During the first extractions, Plaintiff and others yelled at officers to turn off the vents because they could feel the effects of the spray. *Id.* at 19:12-22, 28:1-3. Plaintiff testified that he specifically told Defendant King that the vents were on and blowing OC/CS spray into his cell. *Id.* at 30:7-9. Video of the extractions recorded coughing and shouting from inmates informing officers that they could not breathe and asking that the vents be turned off. Meggitt Decl. Ex. 25. According to Plaintiff, the vents were never turned off. *Id.* at 28:1-6; 36:1-8.

Defendant King, the Special Housing Lieutenant that evening, asserts that he did not have notice of inmates' concerns regarding the air circulation and their exposure to chemical agents until after the last extraction. King Decl. ¶ 7. Defendant King discovered that the air handlers had been prematurely reactivated before the last extraction was complete. *Id.*; Turner Decl. ¶ 6. Defendant King communicated with the physical plant, which had control of the air system, and informed it that it needed to turn off the air handlers. King Decl. ¶ 7; Meggitt Decl. Ex. 2 (King Dep.) at 25:23-26:6. According to Defendant King, the air handlers were deactivated immediately after they discovered the problem, and Defendants King and Turner decided to offer showers and clean clothing to each inmate on the unit. King Decl. ¶¶ 7–8; Turner Decl. ¶ 7. According to Defendants, Plaintiff was given a shower around 8:50 PM, approximately three hours after the first extraction began. King Decl. Att. 2 at 21; Turner Decl. ¶ 7; DiGiulio Decl. ¶ 7.

According to Plaintiff, however, he was not provided a shower until approximately 10:40 PM, after the shift change and four hours after the extractions began. Meggitt Decl. Ex. 1 (Mendoza Dep.) 27:1-2. Plaintiff testified that between the first extraction and the arrival of the Hazmat team to clean up the spray, Plaintiff requested a shower from every officer who passed

his cell. *Id.* at 26:11-25; 20:8-12, 29:20-23; Turner Dep. 22:9-24 (recalls interacting with Plaintiff that evening). As he waited for a shower, Plaintiff's eyes and skin were burning, and he felt like he could not breathe. Meggitt Decl. Ex. 1 (Mendoza Dep.) 29:6-8. When Plaintiff finally did take a shower, the hot water exacerbated his pain, causing "burning everywhere." *Id.* at 32:6-18. He felt the effects for an additional day and a half. *Id.* at 33:9-22.

Plaintiff also testified that he requested medical attention that evening and was told to wait for sick call the next morning. *Id.* at 33:23-34:4. The next morning, Plaintiff's eyes and skin were still burning. *Id.* at 34:22-25. Defendant Aly and a nurse came by his cell. Plaintiff asserts that Defendant Aly wrote his name down as someone seeking medical attention for secondary exposure, but no medical professional visited Plaintiff. *Id.* at 34:5-21, 35:7. Defendants have no record of Plaintiff requesting to be seen the next morning. DiGiulio Decl. ¶ 5. At some point, Plaintiff was offered a second shower but refused. Turner Decl. ¶ 8. Plaintiff did not send a kyte to health services in the days following the incident regarding the impacts of the OC spray. DiGiulio Decl. ¶ 6.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff brings his claims under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Defendants move for summary judgment on Plaintiff's Eighth Amendment claim against Defendants King, Turner, and Aly and on Plaintiff's supervisory liability claims against Defendants Peters, Cain, Gower, Bell, and Gilmore (the "Supervisory Defendants"). The Court addresses each claim in turn.

## I.     Deliberate Indifference

Plaintiff alleges that Defendants King, Turner, and Aly were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. A prison official violates an inmate's Eighth Amendment rights if they are "deliberately indifferent" to the inmate's "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). Thus, to establish an Eighth Amendment claim, Plaintiff must show: (1) that he had a "serious medical need" and (2) that Defendants were deliberately indifferent to that need. *Id.* at 104. "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain[.]" *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (internal quotations omitted)

Deliberate indifference may be satisfied by showing: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Jett*, 439 F.3d at 1096 (quoting *McGuckin*, 974

F.2d at 1059). For Plaintiff to succeed, he must show Defendants acted with more than "[m]ere negligence." *Clement*, 298 F.3d at 904 (citing *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)). Rather, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Id.*

There is an issue of fact as to whether Defendants King and Turner were deliberately indifferent to Plaintiff's serious medical needs. In their motion, Defendants emphasize both the precautionary measures Defendants King and Turner took in preparing to deploy the OC/CS spray and their remedial steps after the extractions were complete. Def. Mot. 14-15. According to Plaintiff, however, Defendants King and Turner were both notified of the issues with the ventilation system earlier in the evening when inmates began shouting during the extractions. Meggitt Decl. Ex. 3 (Turner Dep) 14:16-25; Meggitt Decl. Ex. 1 (Mendoza Dep.) 19:12–17; Meggitt Decl. Ex. 25.  In addition, Plaintiff testified that he was not provided a shower until 10:40 PM—after Defendants Turner and King had left for the evening and four hours after his initial exposure. Meggitt Decl. Ex. 1 (Mendoza Dep.) 27:1-2, 31:20-32:5. Thus, viewed in the light most favorable to Plaintiff, the facts show Defendants King and Turner knew of Plaintiff's potential secondary exposure and delayed any remedial actions for four hours thereafter. *See Clement*, 298 F.3d at 905 ("In this case, the prisoners may be able to show that the defendants were subjectively aware of the risk of serious injury when they denied showers and medical attention for the inmates for the 4-hour period.").

Defendants also emphasize the competing concerns faced by Defendants King and Turner in assembling an extraction team. Def. Mot. 15–16. But whether these concerns are relevant to Defendants' subjective intent is for the jury to decide, particularly as the extraction was complete at least an hour before Plaintiff was given a shower. *See* King Decl. Att. 2 at 10-

7 – OPINION & ORDER

11; *Clement*, 298 F.3d at 905 (finding that the plaintiffs might "be able to show that the defendants were subjectively aware of the risk of serious injury when they denied showers and medical attention for the inmates for the 4-hour period"). Because a reasonable jury could conclude that Defendants King and Turner knew of the risk of harm to Plaintiff and yet delayed decontamination, Defendants King and Turner may be liable for deliberate indifference.[1]

As to the claims against Defendant Aly, however, Plaintiff's claim fails. Plaintiff testified that he informed Defendant Aly that he wanted medical attention due to secondary exposure, but no medical professional ever visited him. Meggitt Decl. Ex. 1 (Mendoza Dep.) 34:6-21, 35:7. Plaintiff also emphasizes that Defendants have produced no record to show that Defendant Aly wrote Plaintiff's name down and provided it to nursing staff. Pl. Resp. 23. But even viewing the facts in the light most favorable to Plaintiff, these facts are not enough to succeed on a claim for deliberate indifference against Defendant Aly. Plaintiff has cited no evidence to establish a causal link between the actions of Defendant Aly and Plaintiff's injury. While Plaintiff asserts he was still experiencing discomfort at when he asked for medical attention, Plaintiff cites no evidence of what relief—if any—Defendant Aly could have provided him. *See* Pl. Resp. 5, 23. Thus, a reasonable jury could not conclude Defendant Aly was deliberately indifferent to Plaintiff's serious medical needs. Defendant Aly is dismissed from this case.

**II.     Supervisory Liability**

Defendants also move for summary judgment on Plaintiff's § 1983 claims against the Supervisory Defendants. "[F]or a person acting under color of state law to be liable under section

---

[1] Defendants also argue that they are entitled to qualified immunity on this claim, arguing Plaintiff has not demonstrated that Defendants Turner and King violated Plaintiff's Eighth Amendment rights. Def. Mot. 17. Because this argument is duplicative of the Court's analysis regarding the merits of Plaintiff's Eighth Amendment claim, the Court declines to address it separately.

1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citing *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987)) (emphasis added). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)).  Thus, "'[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). In addition, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446–47 (9th Cir. 1991) (internal citations and quotations omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

The Court finds that Defendants are entitled to summary judgment on Plaintiff's claim against the Supervisory Defendants. Viewed in the light most favorable to Plaintiff, the evidence does not demonstrate that Defendant Peters acquiesced to an unconstitutional chemical agent

decontamination policy that was the moving force behind Plaintiff's injuries. Defendant Peters has policymaking responsibilities related to the safekeeping of prisoners, Pl. Resp. 23; *see also* Pl. Resp. 9-10 (citing Or. Rev. Stat. § 423.075(5)(d)), and she admitted that she had knowledge of both formal and informal complaints from inmates that officers took too long to provide showers to inmates who had been directly exposed to chemical agents, Meggitt Decl. Ex. 21 (RFA 4, 5). Defendant Peters was also a named defendant in 2015 and 2016 prisoner civil rights cases alleging improper decontamination after exposure to OC spray. *See Walsh v. Peters*, 2:15-cv-01012-MO; *Walsh v. Peters et. al.*, 2:16-cv-00904-MO. One of the lawsuits cited by Plaintiff involves inadequate decontamination after direct exposure to OC spray and therefore does not provide notice that Defendants' policies for decontamination after indirect exposure to chemical agents were constitutionally infirm. Third Am. Compl., *Walsh v. Peters, et. al.*, 2:15-cv-01012-MO, ECF 86. The second lawsuit does involve inadequate decontamination after indirect exposure to OC spray, *see* Compl., *Walsh v. Gower, et. al.*, 2:16-cv-00904-MO, ECF 2, but the case ended with a settlement and did not proceed through summary judgment or trial, *see* Notice of Settlement, *Walsh v. Gower, et. al.*, 2:16-cv-00904-MO, ECF 23. Even viewing the facts in the light most favorable to Plaintiff, this single incident of allegedly inadequate decontamination does not establish that Defendant Peters was on notice that ODOC procedures, policies, or training for decontamination after secondary exposure were inadequate or unconstitutional. *See Clement*, 298 F.3d at 905 (where inmates recited "numerous instances of the use of pepper spray that allegedly harmed uninvolved bystander inmates" the court concluded that a factfinder could find that policymakers were on "actual or constructive notice of the need to train" (quotations omitted)).

Similarly, no reasonable jury could conclude Defendants Gilmore or Gower are liable for Plaintiff's injury. Defendant Gilmore is the Assistant Superintendent of Correctional Rehabilitation at SRCI. Meggitt Decl. Ex. 22 (RFA 1). As early as 2016, Defendant Gilmore knew of complaints that officers took too long to provide decontamination showers to inmates suffering from direct exposure to OC spray. *Id*. (RFA 4, 5, 6). But Plaintiff cites no evidence that Defendant Gilmore had knowledge of prisoner's complaints regarding decontamination protocol from indirect or secondary exposure to OC spray. Defendant Gower—Assistant Director of ODOC—and Defendant Gilmore were both copied on the final denial of Plaintiff's grievance appeal. Ex. 15 at 2. But knowledge of issues with decontamination and secondary exposure after the incident does not establish the requisite causal connection between Defendants' actions and Plaintiff's injury. Based on the record, there is no evidence that Defendants Gilmore or Gower are liable for their own "action or inaction in the training, supervision, or control of [their] subordinates; for [their] acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of" Plaintiff. *See Starr*, 652 F.3d at 1208.

Nor could a jury find Defendant Cain liable in a supervisory capacity. Defendant Cain, the Superintendent of SRCI, is part of the executive team that makes higher-level decisions. Meggitt Decl. Ex. 6 (Bell Dep.) 12:10-21. In support of this claim, Plaintiff cites a 2016 email sent to superintendents regarding issues with decontamination after direct exposure to chemical agents. Ex. 19. Plaintiff also emphasizes that Defendant Cain was the responding official on a grievance appeal response in September 2017 involving a similar August 2017 incident and therefore knew or should have known of issues involving decontamination and secondary exposure to OC/CS spray before November 2017. Meggitt Decl. Ex. 16 at 5. But again, a single incident of allegedly inadequate decontamination after secondary exposure does not establish

11 – OPINION & ORDER

that Defendant Cain was on notice that their procedures, policies, or training for decontamination after secondary exposure were inadequate or unconstitutional. *Cf. Clement*, 298 F.3d at 905 (finding that the plaintiffs may have established that supervisors were on actual or constructive notice of the need to train in submitting "numerous instances of the use of pepper spray that allegedly harmed bystander inmates").

A reasonable jury could conclude, however, that Defendant Bell was aware of issues with the decontamination protocol for secondary exposure and that his own action or inaction may have led to Plaintiff's constitutional injury. Defendant Bell is the Assistant Superintendent of Security at SRCI. Meggitt Decl. Ex. 6 (Bell Dep.) 7:13-20. As such, he is responsible for DSU security issues, including the discipline of officers who violate policies. *Id.* at 8:1-16; Meggitt Decl. Ex. 23 (RFA 1, 2, 3). He testified that he was aware of earlier complaints of issues with secondary exposure. Meggitt Decl. Ex. 6 (Bell Dep.) 7:5-8; 29:11-17. Prior to this incident, he was made aware of a similar incident in August 2017 involving secondary exposure. He was copied on a grievance appeal response involving said incident in September 2017, two months before this incident occurred. Meggitt Decl. Ex. 16 (Karle Grievances) at 5. Defendant Bell also knew that secondary exposure could cause pain as he had briefly been indirectly exposed to chemical agents himself during a training. Meggitt Decl. Ex. 6 (Bell Dep.) 20:4-21:14; Meggitt Decl. Ex. 23 (RFA 9). Taken together, a reasonable jury could infer that Defendant Bell knew or should have known both that secondary exposure to OC/CS spray could lead to Plaintiff's injuries and that there were issues with decontamination after secondary exposure for inmates housed at SRCI. His failure to take some action to provide decontamination for inmates secondarily exposed to chemical agents could be the moving force behind Plaintiff's injury. *See Clement*, 298 F.3d at 905 (where inmates recited "numerous instances of the use of pepper spray

that allegedly harmed uninvolved bystander inmates" the court concluded that a factfinder could find that policymakers were on "actual or constructive notice of the need to train" (quotations omitted)). Thus, Defendants' motion is granted as to Defendants Peters, Gower, Gilmore, and Cain, and denied as to Defendant Bell.

### III.   "Doe" Defendants

Defendants also move to dismiss the "Doe Defendants." Rule 4(m) of the Federal Rules of Civil Procedure requires a plaintiff to serve a defendant within 90 days after he files the complaint. The 90-day service deadline runs from the date of the original complaint for any named Doe defendant. *See Third World Media, LLC v. Does 1-1568*, No. C. 10-04470 LB, 2011 WL 4344160, at *2 (N.D. Cal. Sept. 15, 2011) (finding that, absent a showing of good cause, a court may dismiss a complaint for failure to serve Doe defendants within the time allowed by Rule 4(m)); *see also Sedaghatpour v. California*, No. C07-01802 WHA, 2007 WL 2947422, at *2 (N.D. Cal. Oct. 9, 2007) ("Furthermore, the Court may dismiss 'Doe' defendants who are not identified and served within 120 days after the case is filed pursuant to FRCP 4(m)."). It does not appear any attempt has been made by Plaintiff to serve these Defendants or discover their identities. Accordingly, Defendants' motion is granted as to the "Doe" Defendants, and they are dismissed from this case.

///

///

///

///

///

///

## CONCLUSION

The Court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment [48]. Defendants Peters, Gower, Cain, Gilmore, "John" Aly, "John Doe," and "John Doe" are dismissed from this case.

IT IS SO ORDERED.

DATED: March 28, 2021.

                                                                                           _____
MARCO A. HERNÁNDEZ
United States District Judge